UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAROLYN C., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:23-cv-00359-LEW |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

    The Plaintiff in this Social Security Disability and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) (1) violated the *de minimis* standard in finding that none of her fifteen medically determinable impairments, including her interstitial cystitis (IC), were severe individually or in combination and (2) failed to follow Social Security Ruling 15-1p in deeming her IC nonsevere. *See* Plaintiff's Brief (ECF No. 8) at 3-13. I agree that the ALJ erred in finding the Plaintiff's IC nonsevere and, on that basis, recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.[1]

**I. Background**

    This case returns to this Court after the Plaintiff appealed an adverse May 3, 2021, decision by the ALJ and the Commissioner requested a remand. *See*

---

[1] I need not and do not consider the Plaintiff's other points of error.

1

*Carolyn C. v. Kijakazi*, No. 1:22-cv-00020-JDL, ECF No. 14 (D. Me. June 16, 2022). The Appeals Council then vacated the decision and remanded the case to an ALJ to give further consideration to the Plaintiff's IC and irritable bowel syndrome (IBS), neither of which the ALJ had found to be medically determinable impairments. *See* Record at 741. On June 1, 2023, the ALJ issued a new decision finding that, since the Plaintiff's alleged onset date of disability, May 1, 2019, *see id.* at 648, she (1) had medically determinable impairments of diabetes mellitus, migraine headaches, hypercholesterolemia, hypertension, hypothyroidism, a history of breast cancer (in remission), IC, IBS, fibromyalgia, oral lichen planus, obesity, bilateral sensorineural hearing loss, tinnitus, vertigo, and anxiety disorder, *see id.*; (2) had no severe impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months, *see id.*; and (3) therefore was not disabled at any time from her alleged onset date of disability, May 1, 2019, through the date of the decision, June 1, 2023, *see id.* at 656. The Plaintiff elected not to request review of the ALJ's decision by the Appeals Council, *see* Plaintiff's Brief at 2, making that decision the final determination of the Commissioner as of sixty-one days after the June 1, 2023, date of notice of the unfavorable decision, *see* 20 C.F.R. §§ 404.984(d), 416.1484(d).

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial

evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

In remanding this case, the Appeals Council faulted the ALJ for failing to "explain how he considered the medical evidence that could support finding" the Plaintiff's IC both medically determinable and severe. Record at 741. The Appeals Council pointedly observed:

> [T]he record demonstrates that the [Plaintiff] tried several different treatments to control her [IC] symptoms, including changes in diet, pelvic floor physical therapy, weekly bladder instillations, and medication. However, the [Plaintiff] still reported incomplete control of her symptoms. For example, [she] reported bladder urgency after physical therapy and that bladder instillations were no longer effective in controlling her symptoms.

*Id.* at 742 (cleaned up). The Appeals Council questioned the ALJ's reliance on the opinions of agency nonexamining consultants Donald Trumbull, M.D., and Benjamin Weinberg, M.D.—neither of whom found the Plaintiff's IC even to be a medically

3

determinable impairment—when those consultants "did not have access to the medical record" bearing on IC. *Id.*; *see also id.* at 73-74, 85-86.

The Appeals Council elaborated:

For example, the . . . consultants did not have access to Exhibits 4F, 5F, and 6F. Exhibit 4F shows that the [Plaintiff] tried physical therapy to reduce her bladder pain. Exhibit 5F shows that the [Plaintiff] underwent a vaginal trachelectomy procedure due to pelvic pain and deep dyspareunia, and afterwards, she reported an increase in her [IC] symptoms after the procedure. Exhibit 6F shows treatment for [IC] and her doctor discussed several treatment options, including medication, physical therapy, tibial nerve stimulation, sacral implant, and bladder Botox. It is not clear from the hearing decision how the [ALJ] considered this evidence while evaluating the [Plaintiff's] IC . . . at step two.

*Id.* at 742 (cleaned up).

The Appeals Council directed the ALJ to "[f]urther evaluate the nature, severity, and effects of the [Plaintiff's] medically determinable impairments, including" her IC, and "[g]ive further consideration to the medical source opinions and prior administrative medical findings[.]" *Id.* at 743. On remand, the ALJ found IC to be a medically determinable impairment. *See id.* at 648. However, he then reached a conclusion unsupported by substantial evidence that the Plaintiff's IC had no more than a minimal effect on her ability to perform basic work activities and, therefore, was nonsevere.

The ALJ noted that the Plaintiff had testified at her post-remand hearing that she has "10+ pain from" IC, "flare-ups from this condition but always . . . a base amount of pain," "bad flares . . . 2-3 times a month from 3-10 days," and instillations lasting about two and a half hours "about once a week," decreasing her pain "to a tolerable 3-4 level," and that she needed to "get[] up to pee 3-4 times a night" and got

4

"anxious and always needs to know where bathrooms are." *Id.* at 649-50. He found that the Plaintiff's IC reasonably could be expected to produce those alleged symptoms. *See id.* at 650.

However, he rejected that testimony *in toto* on the bases that the alleged symptoms "appear[ed] generally well managed with treatment," the Plaintiff had "received bladder instillations and reported doing well with these," although the instillations "were eventually discontinued due to recurrent" urinary tract infections, and she had denied "extremes" in urinary symptoms to an oncologist. *Id.* at 651.

The ALJ then discounted the post-remand opinions of both a treating source, Sarah Crane, D.O., and an agency examining consultant, Heather Sevigny, FNP-C, that the Plaintiff had physical functional limitations, *see id.* at 654-55, 1087-90, 1098-99—including, per Dr. Crane, serious limitations caused by IC[2]—and again deemed the findings of Drs. Trumbull and Weinberg persuasive, stating that while there had been "significant additional medical evidence received at the hearing level (Ex. 4F-18F), the State agency consultants' findings continue to be consistent with the record as a whole." *Id.* at 652-53. That was so, the ALJ explained, because the record demonstrated that the Plaintiff's physical impairments had been "overall well controlled with treatment," the Plaintiff "retain[ed] sufficient functioning to complete a wide range of daily activities, including bathing, cooking, cleaning, driving, and

---

[2] Dr. Crane described the Plaintiff's IC symptoms as urinary frequency, urinary urgency, anxiety, bladder/pelvic pain, low back pain, depression, nocturia with disrupted sleep, and daytime drowsiness and lack of mental clarity, *see* Record at 1087, causing work-related limitations that included a need to shift positions at will from sitting, standing, or walking, have ready access to a restroom, and take unscheduled restroom breaks every forty-five minutes for five to fifteen minutes at a time, sometimes with no advance notice, *see id.* at 1089.

attending appointments," and "physical examinations ha[d] been typically unremarkable, showing full strength, normal gait, normal range of motion, etc." *Id.* at 653.

In so finding, the ALJ restated rationales that the Appeals Council had deemed deficient, *compare id.* at 652-53 *with id.* at 16-17, 742, failed to come to grips with the contrary medical evidence bearing on the severity of the Plaintiff's IC that the Appeals Council had flagged, *compare id.* at 651-53 *with id.* at 742-43, and again relied on the findings of agency nonexamining consultants who lacked the benefit of review of material, later-submitted evidence bearing on the Plaintiff's IC, *compare id.* at 652-53 *with id.* at 742. Indeed, because Drs. Trumbull and Weinberg did not find IC to be a medically determinable impairment, they would not even have considered whether it imposed any work-related functional limitations. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b) ("Your symptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.").

As the Appeals Council made plain, *see* Record at 741-43, the error is not harmless. Remand, accordingly, is required.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

***A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered***

*pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: July 24, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge